UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>)<br>)<br>)<br>v. )<br>)<br>JAIME MEDINA, *et al.* )<br>)<br>)<br>Defendants. )<br>_____) | CRIMINAL NO. 06-232 (RCL)<br><br>**FILED**<br>JUN 24 2009<br>NANCY MAYER WHITTINGTON, CLERK<br>U.S. DISTRICT COURT |

<u>MEMORANDUM OPINION</u>

Now before the Court are the defendants' motion [72] for a hearing and/or for appropriate relief and movant District of Columbia Department of Corrections ("DOC") motion [89] to vacate the Court's March 11 and March 24, 2009 orders. Upon consideration of the motions, the oppositions, the replies, the entire record herein, and applicable law, the defendants' motion will be granted in part and denied in part and the DOC's motion will be granted.

I.  <u>BACKGROUND</u>

Defendants[1] are Colombian nationals who have been indicted in a multi-count indictment alleging they have unlawfully conspired to import cocaine into the United States. The defendants have been extradited, held without bond, and are awaiting trial. The evidence in the case consists

___

[1] Defendants Luis Ropero Diaz, Juan Carlos Medina Coronado, Jorge Emigdio Vasquez Molina, Luis Horacio Restrepo Martinez, Ubernel Perez Quintero, and Luis Alberto Perez Quintero were subject to the March 11, 2009 order transferring the defendants to the Correctional Treatment Facility ("CTF"). Jaime Medina was ordered transferred on March 24, 2009. Edgar Perez arrived in the United States later, is currently housed at the D.C. Jail, and has asked to be transferred to CTF. Luz Estella Fernandez Velez is a female inmate and the parties to not dispute that she is to be housed at CTF pursuant to Department of Corrections' policy.

1

of hundreds of recorded conversations and hundreds of pages of Spanish language documents. Accordingly, the defendants must be afforded substantial time to review the evidence against them as well as be given time to meet with their attorneys and, when necessary, interpreters. After a couple of status conferences in this case, it became apparent to the Court that the defendants were not being afforded adequate opportunities to review discovery and meet with their lawyers. When the defendants were given these opportunities, they were doled out in a seemingly arbitrary and unpredictable manner. As a result, the Court—concerned that the DOC's practices were infringing on the defendants' constitutional rights of access to counsel and access to discovery—ordered the DOC to file its procedures governing access to counsel and discovery with the Court. The Court also ordered the defendants transferred from the District of Columbia Jail to the Correctional Treatment Facility ("CTF"), a lower security facility in which the Court was told by the defense attorneys that they would have increased access to their lawyers and to discovery.

Since those orders, the DOC has filed its procedures governing access to counsel and to discovery at the D.C. Jail and CTF. Following comment by the defense attorneys and the Department of Justice, the DOC then filed revised procedures with the Court. (Docket [97].) Since the March 2009 transfer orders, the DOC also decided to undertake a review of the classification status of many of its extradited inmates, including the defendants in this case. However, because the DOC felt that it did not possess adequate information about the inmates to properly classify them, it asked for a report from the Department of Justice as to its allegations against many defendants. Following its receipt of the report from the Department of Justice and the review of the defendants' institutional files in this case, the DOC decided that the inmates

should be classified at the "maximum" security level. Because maximum security prisoners are generally housed at the D.C. Jail, and not CTF, the DOC also filed a motion to vacate the Court's March 11, 2009, and March 24, 2009 orders transferring the defendants to CTF. The defendants objected to DOC's motion and alleged that the decision to classify the defendants as "maximum" was punitive.

## II. ANALYSIS

### A. Applicable Law

The Court is concerned primarily that the defendants not be deprived of their Constitutional rights. "There is no iron curtain drawn between the Constitution and the prisons of this country." *Wolff v. McDonnell*, 418 U.S. 539, 555–56 (1974). As a result, while inmates, even pretrial detainees, may have their liberties curtailed as a natural incidence of detention, the "opportunity to consult counsel must be preserved." *Laughlin v. Cummings*, 105 F.2d 71, 73 (D.C. Cir. 1939). Moreover, any consultation with counsel is rendered meaningless unless the defendants and their attorneys have an opportunity to review the evidence. In addition, the defendants in this case are in a unique position because they have not been convicted of a crime. Cases cited and relied on by the DOC that relate to convicts, therefore, have little or no relevance here. The Court paid little or no attention to cases cited by the DOC relating to convicted prisoners. *See, e.g. Sandin v. Connor*, 515 U.S. 472, 474 (1995); *Meachum v. Fano*, 427 U.S. 215, 216 (1976). The DOC must recognize that in contrast to convicts, pretrial detainees should not be punished for the indicted crime[2] prior to the resolution of the case. In fact, "under the Due

---

[2]In this case, defendants do not make entirely clear whether they are arguing that DOC unlawfully punished them for the indicted crime or whether they are arguing that DOC unlawfully punished them for challenging their housing situation in this Court. Regardless, the

Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

Nevertheless, with the exception of cases in which the Department of Corrections hampers an inmate's ability to access counsel, discovery, or unlawfully punishes an inmate prior to conviction, the Court is not generally concerned with the day-to-day administration of detention facilities. "[C]ourts are ill equipped to deal with the increasingly urgent problems of prison administration" and it would "not be wise for [courts] to second-guess the expert administrators on matters on which they are better informed." *Bell*, 441 U.S. at 531 (quoting *Procunier v. Martinez*, 416 U.S. 396, 405 (1974)). As a result, with regard to the everyday administration of pretrial detention facilities, the Court is merely concerned with whether a "particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective"; if so, the detention facilities practice does not violate due process and thus should generally not concern the court. *See Bell*, 441 U.S. at 548 ("[T]he operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial.").

### B. The Court has Jurisdiction to Grant Defendants Relief

Defendants first argue that this Court has jurisdiction to grant the defendants relief. The Court agrees. Merely because the administrators at the jail are generally in a better position to make classification decisions and decisions regarding day-to-day operations in the jail does not mean that this Court is without jurisdiction to grant pretrial detainees relief when the actions of a

---

Court will assume that punishment of a pretrail detainee resulting from either of these motives is impermissible.

correctional facility violate the Constitution or impede the Court from administering justice. Nor is the suggestion and authority presented by the DOC that this Court is without jurisdiction availing. The DOC states that "[t]he Prison Litigation Reform Act ("PLRA") requires exhaustion of administrative remedies." (DOC Reply [112] at n.6.) The PLRA only applies to "suits by prisoners"[3]; these defendants have challenged their classification status in connection with their criminal case, in which they are being held pending trial. This is not a civil action, and the PLRA is wholly inapplicable. Nor is this, as the DOC suggests, "some sort of informal *habeas* petition." (DOC's Reply [112], at 8 n.6.) Instead, the defendants have raised claims based on the Constitution and their status as pretrial detainees in a criminal case. Without ensuring that the defendants have access to their counsel and to discovery, any convictions that result from proceedings in this Court could be invalidated. Accordingly, the Court is certainly not prohibited from remedying constitutional violations that infect its administration of criminal justice.[4]

Not only does the Court have jurisdiction in this case, but there are sound reasons why the DOC should heed Court orders regarding inmates. In some cases, DOC is not aware of all of the circumstances of a particular case; for example, in some cases a defendant may be cooperating with the government or have received threats from another inmate and will be in physical danger if he/she is not transferred to another facility. In other instances, a defendant may have serious

---

[3] 42 U.S.C. § 1997(e).

[4] To the extent that the defendants make claims that the classification decisions of DOC are punitive, the Court also has jurisdiction over these claims. *See, e.g., Bell v. Wolfish*, 441 U.S. 520, 536–37 (1979) (stating that the Government may detain a defendant pending trial so long as the conditions of confinement do not amount to punishment or otherwise violate the Constitution).

medical problems that are brought to the attention of the Court through a defendant's lawyer at a hearing and that condition might necessitate a transfer.[5] In cases such as this one, discovery problems and counsel access problems may plague a case so severely that the Court must resort to a defendant's transfer in order to preserve the Constitutional right of a speedy trial, access to counsel, and access to discovery. As a result, while the Court realizes that the day-to-day operations of a correctional facility are generally left in the sound discretion of expert administrators, the DOC should also be mindful of the fact that the Court must safeguard a pretrial detainee's constitutional rights and is sometimes making decisions based on information not available to the DOC. To the extent that the DOC believes the Court does not have jurisdiction to enter a particular order, it is free to make this argument in court—however, the DOC should not unilaterally resolve this issue by simply ignoring court orders that pertain to inmates at its facilities.[6] Indeed, officials at the Department of Corrections are subject to contempt proceedings for willfully disobeying Court orders.

C.   **The DOC's Classification of the Defendants as "Maximum" is not Punitive**

With the relevant framework in place, and after the Court has determined that it has the jurisdiction to grant the defendants relief, the Court will now address the particular issues in this case. Defendants argue that the DOC has classified the defendants in a way that is both punitive and arbitrary. First, defendants cite to the fact that they were ordered to CTF on March 11, 2009—on March 17, 2009, the DOC issued a memo requiring them to be housed in a "Special

---

[5]CTF differs from the D.C. Jail in that it has an Infirmary and Disabled Inmate Unit. (Decl. of Devon Brown ¶ 24.)

[6]The Court has noticed a disturbing trend—whether as a result of negligence or intentional defiance—that the DOC does not consistently heed transfer orders.

Management Unit" at CTF. Then on April 30, 2009, the defendants' computed classification scores were "over-ridden" and they were re-classified as "special management" and "maximum custody," despite the fact that many of them had been classified as medium or low custody prior to the Court's March 11 order.

The problem with the defendants' argument is that they have not demonstrated that they have been treated different than other defendants who were not subject to the Court's March 11, 2009 order (or who have cases pending before other judges) but that were similarly reclassified as "maximum." Instead of being singled out for punitive treatment, the record reveals that the DOC undertook a review of the classification status of a number of inmates, including many inmates not implicated in the present case. (Def.'s Opp'n [110] at 4; DOC's Reply [112] at 4.) Indeed, 16 other extradited Colombian nationals who were housed at CTF were placed in a "Special Management Unit" on April 2, 2009, and those who were reclassified as "maximum" were transferred to the D.C. Jail on May 14, 2009. (DOC's Reply [112] at 5.) The defendants in this case would have been included in that group but for this Court's order that the defendants were to be housed at CTF. As a result, in the absence of evidence that indicates the defendants in this case have been treated differently than other similarly situated inmates, the Court cannot conclude that the classification of the inmates as maximum was facially "punitive."[7]

Nor do the classification decisions appear to have been so "arbitrary" and not "rationally

---

[7]Moreover, the Court does not agree with the defendants that the DOC's memorandum dated March 17, 2009—6 days after the Court's March 11, 2009 order—indicates that they were being punished. The memorandum refers to the procedure for transferring the defendants at CTF. Prior to the Court's March 11, 2009 order, however, the defendants were housed at the D.C. Jail. It is therefore not surprising that a new memorandum regarding the defendants was generated following the Court's order and the need to transfer the defendants to CTF.

related to a legitimate governmental interest" that the Court can conclude that DOC's proffered reasons for classifying the defendants as maximum were actually a pretense for punishment. Even though the Court may not agree with the DOC's classification procedures or results in every instance, the declaration of Director Devon Brown indicates that the procedures are not arbitrary. The Court will therefore not "second-guess the expert administrators on matters on which they are better informed," *Bell*, 441 U.S. at 531, absent a showing that the administrators' decisions violated the Constitution.

As explained by Brown, classification is a process that takes into account a number of categories of information, including, but not limited to, the inmate's record, an interview of the inmate, information from correctional and other law enforcement officers, the severity of the offense charged, prior felony convictions, age, and history of disciplinary problems. (Decl. of Devon Brown ¶ 6–8.) Moreover, the numerical score generated from this analysis can be subject to an override, as the numerical scores of the defendants were in this case. This override can include the nature and severity of the offense, the level of criminality described in the indictment, whether the inmate is held without bond, whether the inmate has an immigration detainer, whether the inmate has any local ties to the community, and the notoriety of the offense. (Decl. of Devon Brown at ¶ 9.) After giving the DOC the "wide ranging deference" that is required by the Supreme Court, *Bell v. Wolfish*, 441 U.S. 520, 547 (1979), as well as considering that the DOC has restricted space at the CTF, must house a certain portion of inmates at the D.C. Jail, and must make rapid classification decisions about a large number of inmates,[8] the Court is not

---

[8] Approximately 19,000 inmates pass through the Department of Corrections each year. (Decl. of Devon Brown ¶ 16.)

convinced that these factors are arbitrary or otherwise prohibited factors to consider when making classification decisions.[9]

Not only were the inmates classified pursuant to accepted procedures, but the defendants have not demonstrated that the application of the factors to the present case was arbitrary or not rationally related to a legitimate government interest. The defendants argue that because the case is a drug conspiracy, it does not warrant an override of the defendants' custody score. Of course, this offense was not viewed in isolation, but in combination with the other factors listed by the DOC; that the defendants are alleged to have been involved in a multi-defendant conspiracy that operated internationally[10]; that the defendants do not have ties to the community and thus are more likely to escape; and that the defendants have been held without bond. In the Court's view, these factors do indeed weigh in favor of classifying the defendants at a higher end of the spectrum and considering them is, at the very least, rationally related to a legitimate government interest in ensuring the defendants' appearance at trial.[11]

---

[9] Nor do the defendants make a serious argument that the criteria themselves are impermissible. Defendants focus their attacks on the application of the criteria to the individual defendants. They do argue that Courts should not consider an immigration detainer as a factor that weighs toward a higher level of custody but do not provide any legal argument as to why this is an impermissible factor to consider. Indeed, the Court recognizes that lack of ties to the community may weigh in favor of classifying an inmate at a higher level of custody.

[10] In the sealed classification documents, the DOC referred to the defendants as involved in an "international crime organization." The defendants argue that there is no "organization" named in the indictment. The Court will give the DOC the benefit of the doubt and assume that they were referring to the defendants' drug conspiracy as the "organization," and the fact that they are alleged to have imported cocaine into the United States as the element that made the organization "international."

[11] With respect to some defendants, the DOC has stated in the under seal documents that were filed with the court that they considered that the defendants are charged in a crime that has resulted in a "high level of attention from DOJ." The Court agrees with the defendants that, even

As stated above, the Court generally defers to the DOC's classification decisions. Of course, the Court cannot defer if the decisions as to pretrial detainees are punitive, if the decisions appear so arbitrary that they are a pretext for a punitive decision, or if DOC's decisions are infecting the Court's ability to administer justice because the defendants are being denied access to counsel or to discovery. The Court has already concluded that despite some irregularities concerning these defendants and their classification since arriving in D.C., they have not made the necessary showing that DOC's practices have been punitive or arbitrary.

### D.   The Inmates will Retain their Constitutional Rights at the D.C. Jail

As to the inmates' abilities to retain their constitutional guarantees at the D.C. Jail, the Court has concluded that the DOC's assurances, in combination with the court ordered procedures that were filed in this case, mean that the inmates can receive access to counsel and discovery even if they are classified as "maximum" and housed at the D.C. Jail. Although there have been some hiccups in the past, the DOC has assured that "inmates in maximum custody in the Jail enjoy constitutionally-guaranteed rights to visitation, access to law library materials, communication with legal counsel, recreation, bathing, phone calls, and religious services." (DOC's Reply [112] at 7.) And, to ensure that the pretrial detainees in this case are receiving

---

if this is an acceptable classification factor, there is no evidence in the record that this case has received any media attention, is a high profile case, or has received more attention from the Department of Justice than any other drug conspiracy case. The Court does not believe, however, that incorrect consideration of this factor violated the Constitution or was a pretense for arbitrary or punitive action, and therefore will not meddle in the minutiae of the classification decisions on this basis alone. However, the DOC should update the defendants' files to reflect that the case is not one of high notoriety. If the DOC's belief that this case has resulted in a high level of attention from the Department of Justice was the determinative factor in classifying the defendants as "maximum," the DOC should undertake a new review of their classification status.

access to counsel and discovery, the Court will order that the DOC's revised procedures[12], filed on May 20, 2009 (Docket [97]), govern the defendants' confinement in this case.[13] The DOC must file a motion with the Court if it wishes to modify the procedures in the future. Moreover, if it appears that the DOC cannot provide the defendants with a meaningful opportunity to review discovery or meet with counsel to the extent that it will infect the defendants' opportunity to receive a fair and speedy trial, the Court will order the defendants back to CTF.[14] In the meantime, the DOC's motion to vacate the Court's March 11 and March 24, 2009 orders will be granted, and the DOC's revised procedures will be ordered to be followed in this case.

SO ORDERED.

_____       6/24/09
Chief Judge Royce C. Lamberth         Date

---

[12] The defendants have a couple of objections to the revised procedures promulgated by the Department of Corrections. For example, the defendants would like to receive their documentary discovery electronically instead of in paper form. (Defendants' Objections [94] at 2.) While the Court can see some benefit to defendants' request, the defendants' concerns do not rise to a constitutional dimension, and will not be addressed by the Court. *Cf. Bell*, 441 U.S. at 534 (stating that a detainee's desire to be free from discomfort does not rise to the level of fundamental liberty interests).

[13] Notably, the revised procedures state that attorneys and their agents may access inmates for legal visits 24 hours a day, 7 days a week and that the inmates shall have access to discovery, including up to 2 boxes of documentary discovery at a time. (Docket [97] at 3–5.)

[14] The DOC has also indicated that its classification decisions are fluid, and are reviewed every 90 days. (DOC's Reply at 4; Brown Decl. ¶ 4.) Nothing in this opinion prohibits the DOC from reevaluating the classification factors and transferring the defendants back to CTF on its own prerogative.